Well, good morning. It's great to see live faces. And welcome, everybody. Our first case for the morning is United States v. Rought, No. 20-2667. Counsel, will you be reserving any time? Yes, Your Honor. Three minutes, please. That will be granted. Okay. You can proceed. Good morning. When you're ready. Your Honors, may it please the Court, my name is Ronald Krauss, and I represent James Rought. There's no dispute in this case about three critical points. First, that the FBI subjected James Rought to custodial interrogation in the federal courthouse in Scranton on a one-count indictment for distributing drugs that resulted in death. Second, there's a video recording which shows, which is about almost an hour, and after about 24 minutes, Rought invoked his right to counsel. And third, the FBI did not cease interrogation but continued to question him for another 30 minutes. All right, but of course this is a little more nuanced than that, right? Yes, it is. Okay. The video obviously speaks for itself, and I think both briefs, the government's brief actually did an excellent job going into some detail about what was in the brief, what was in the videotape. But two critical questions arise out of that scenario, and they govern whether or not the district court erred in denying Rought's motion to suppress. The first is whether Rought limited the scope of his invocation to the right of counsel and whether he waived by initiating discussion after he invoked. We submit that the answer to both questions is no, and that, therefore, the district court erred in denying the motion to suppress. Addressing the first issue, whether Rought limited the right to counsel, as Your Honors probably recall, Are there cases in which there is a limited area that the prisoner will discuss without counsel? Not topically, Your Honor. In the Baird case, which was an odd case, the suspect was willing to speak to the police without any problem whatsoever. He just wanted an attorney for written statements. Why he made that distinction never made clear. But that was not a topical distinction. Here, the limitation is supposedly one of subject matter, and I could not find any case where that happened. So are you arguing that it's simply not possible to sort of have a limited invocation? Well, first of all, it's never, as I said, we can't find a case where it's happened. Second, Barrett also, which had the, we'll call it a modality limitation of written versus spoken, it also said that to the extent an invocation is ambiguous, the court is to give a broad interpretation of that respect. And I think what that does, and I think it's highlighted here, where the district court focused on the words of that aspect, which are pretty ambiguous, and then ignored what Rot said after that, acknowledging that this was a serious situation that he was in, and that they're trying to roof me, which, as I explained in the brief, it's apparently prison parlance for the trying to put my sentence through the roof. So Rot's statement makes clear that he knows two things, that he's in big trouble in terms of what kind of sentence he's going to get. And this is a serious situation. And I think it's reasonable to assume that he was thinking that this serious. Well, maybe there's a third thing he acknowledges, too, and that is he can limit the discussion. Right? He said, I want to talk about that aspect. He knew he didn't have to talk to the police or the agents. I would say that that's ambiguous, again. Mr. Rot has a 10th grade education. He's sitting in custodial interrogation with two highly sophisticated FBI interrogators. I think to dwell too much on one or two words is really not right. And that's exactly why the Barrett court said that we're supposed to give a broad interpretation if there's any ambiguity. So you think we ought to have a break line rule that any invocation of counsel stops all further interrogation? I think that would be a great idea. And that's certainly a case in, I believe that's a case in the Sixth Amendment. But that's a little bit different. That has some different considerations. Now, Rot invoked his right to counsel, and there are cases that discuss this, because he wanted the lawyer to be with him for any question relevant to the charge against him. There was no reason for him to limit the scope of counsel. It flies in the face of common sense. And, in fact, the Supreme Court in Arizona v. Roberson stated that when a suspect like Rot invokes the right to counsel, that creates a presumption, a presumption that the suspect considers himself unable to deal with the pressures of custodial interrogations without legal assistance. And that doesn't have anything to do with whether it's one topic or another. The presumption is not topically limited. Okay, so the FBI is telling him, look, we're not so much interested in what you did. We want to know the people higher up. And that's what we want to talk to you about. Can't they continue along that line? Well, first of all, I would say they can't, because they're either required to cease interrogation. Well, no, they are required to cease interrogation unless Rot initiates the discussion. And that really brings us to the next question. The district court ruled that Rot initiated a post-invocation discussion, and then that permitted the FBI to come in and continue the interrogation. And that was right out of Bradshaw, which said after a suspect invokes the right to counsel, a suspect can be subjected to further interrogation only when the suspect initiates the conversation, not vice versa. But here we had vice versa. Having a break in the interrogation, well, let me say this, take a step back, initiating a conversation for the suspect to initiate a conversation, there has to be some sort of break in the conversation. But that didn't happen here. What happened here is the FBI agent immediately, after Rot fell silent, immediately began to talk to Rot. Why does there have to be a break in the conversation? Well, otherwise how is there any – I don't see any basis to say that there's an initiation. Well, you're looking at the content of a longer conversation. I don't know why it has to stop and then restart again. I mean, if you and I are talking about this case and then you start talking about, I don't know, whatever, but it seems in the circumstances it was your client that brought up his friend that he didn't want to talk about earlier. It was not the government agent. Well, but that was in response to a question. And the court in Edwards said specifically that responding to further police-initiated custodial interrogation does not constitute initiation after invocation of the right to counsel. Well, don't we have to look at context? He sort of blurted it out, didn't he? Did the question really elicit comment about the thing he didn't want to talk about? Well, it was at the behest of the FBI agent. In all the cases I've seen which discuss, talk about initiation, there's usually some sort of break between the invocation of the right to counsel and this purported reinitiation of discussion by the suspect. And usually when that happens, the FBI agent will bring up Miranda again and make sure that the suspect does in fact want to be speaking to him, even though he's already invoked the right to counsel. By break, do you mean it has to be, I'm just wondering what your concept of break is. It has to be a completely different time? From everything I've read, it seems like there should be. And maybe even a different interrogator. I see my time is almost up. Are there other questions? Do we have anything else? Okay, thank you, counsel. We'll see you in rebuttal. Have you found any cases where the right to counsel has been limited to the discussion of only certain subjects? Well, first of all, Stephen Surdy on behalf of the United States, it's lovely to be back. To be perfectly honest, I did not look so much at that, simply because if you look at page 18 of Appellant's brief in this case, they agreed that under Barrett that there can be a limitation in scope on an invocation of the Fifth Amendment right to counsel during a custodial investigation. Limitation on scope in what regard? Well, I just said a limitation on scope and left it at that and moved on and then started talking about the ambiguity of the invocation here, which perhaps wrongly I took to mean that they didn't disagree with the district court or the United States position that when you start talking about subject matter, you can limit the subject matter. Now, beyond that, I do think that if you look at the rationale of Barrett and even if you look at the discussion in the Arizona v. Roberson case that was cited by opposing counsel here in their argument, there may not be an explicit discussion of that. However, it seems that the rationale would allow for such a limitation. You know, Barrett says, nothing in the decisions or rationale of Miranda requires authorities to ignore the tenor or sense of a defendant's response to the warnings. In talking about the ambiguities and the ambiguity question, you know, to conclude a defendant invoked his right to counsel for all purposes requires not a broad interpretation of an ambiguous statement, but a disregard of the ordinary meaning of respondent statement. And if you look at what Mr. Roth did here at about the 24-minute mark of his custodial interrogation, we don't disagree that it was custodial. You have the videotape. He said in response to a specific question about, you know, let's talk about Dana. What happened there? The individual who died. A specific question about Dana, Mr. Roth said, I don't want to talk about that aspect. Specific question, specific answer. And then if you look at the context of the conversation leading up to that, over the first 24 minutes, right off the bat, after receiving his Miranda warnings both verbally and in written form and signing that form, he was asked by Special Agent Whitehead, are you willing to talk to us? He said yes to a point. And then proceeded to talk about his own personal history. And then he brought up the point beyond which he didn't want to talk. The subject matter point, yes. But is that a valid, in constitutional consideration, is that a valid limit to put on? I mean, there are no cases that say you can limit the interrogation to past history if counsel is invoked concerning a certain incident in the present time. I mean, there's nothing in the law about subject matter limitation, is there? Again, I perhaps didn't go into this as deeply as I should, assuming that opposing counsel had conceded that particular point. But again, you also made the reference to constitutionality. You don't limit your research to what you consider counsel conceded, do you? Well, I do try and address the arguments that are raised to the court, because if an argument isn't raised, it's considered waived. Perhaps I should expand on that in the future. But I would point out also that when we start talking about the Miranda-Edwards rule, which is at issue here, it's not, and the Supreme Court has said this repeatedly, it is not compelled by the Fifth Amendment itself. It is a prophylactic rule meant to keep questioning agents from badgering a witness about a subject that he doesn't want to talk about. And the agents here did not badger James Rott about Dana Karrickner's death after he raised that. In fact, immediately, Special Agent Whitehead said, that's your right, those are the ground rules, and moved on to a different topic. Now, of course, that gets us to the second part of this, which is whether Mr. Rott re-initiated or initiated the conversation about Dana Karrickner again. And the agent got back to friends overdosing, right? Excuse me? The agent. The agent got back to friends overdosing. Got to Stan Derby overdosing. Well, okay. And that was part, the context of that is important, because he is making clear to Mr. Rott that their interest, law enforcement's interest is going up the chain and finding the people who are introducing this poison into the community and talking about the effects of this poison on the community and then brings up the fact that, you know, which Stan Derby had been mentioned earlier. Again, Stan Derby had been mentioned earlier, James Rott talked about him. So you are creating a very complicated exercise to go through to determine whether, if there is a subject matter limitation, how far that limitation extends. And is that really a proper exercise to require of a defendant under custodial interrogation? I think so. Particularly when you have in this case, when we look at the facts of this case, Mr. Rott has a history of involvement with the justice system, makes clear right off the bat that he understands his Miranda rights, makes clear right off the bat that there are certain topics that he's willing to talk about and certain topics that he's not, and then says in response to a specific question, gives a very specific limited invocation of his right to that aspect. I don't, I believe if we had different facts here, if it was a more ambiguous statement, then I think that it would have been incumbent on the FBI agents in this case to back off. But because it was in response to a very specific statement, because it was a very specific limit to what aspect Mr. Rott wanted to engage an attorney for assistance for, I think that the, and the United States believes that the FBI agents here did exactly what they should have done, which is move off that specific aspect and move on to other topics and stay away from them. One of the topics they moved on to was friends overdosing. A different friend. A different, well, a different friend, but a friend overdosing. A different friend overdosing, but there is no evidence and the United States has never claimed and never accused Mr. Rott of being the one who provided that, those drugs to that friend. And again, it was in the context of the agent trying to explain why it is the FBI and the federal government is interested in going higher up the chain, saying we want to get at LB because LB is creating all of these problems in the community. I mean, heck, you said another one of your friends, or you said Stan Derby, someone you know died. Yes. And immediately Mr. Rott, you know, doesn't sit back and say, well, I said I didn't want to talk about this or show any reluctance whatsoever. He starts talking about how he agrees it's a blight on the community. And, you know, again, he's already talked about LB extensively up until this point. I just think if we start to say that a defendant who can, in the response to a very specific question, gives a very specific answer as to what he is not comfortable talking about to law enforcement and nonetheless don't allow law enforcement to do the common sense and read the common sense everyday meaning into those words and say, okay, he doesn't want to talk about that subject, we'll move on to a different subject, and not come back to it until Mr. Rott did. And you're saying that he then waived his right to counsel when he started talking about friends overdosing and then got back and mentioned the decedent here? Well, we believe that he initiated... As a waiver of his... Well, the Supreme Court has said there's a different... The waiver is not the initiation. The initiation and the waiver are two different things. The initiation is when the individual asks a question or makes a statement indicating some sort of willingness to reopen a discussion about that. And then, of course, if he goes on knowingly and voluntarily to discuss that matter, which happened here, then that constitutes the waiver. And the United States position would certainly be that because Special Agent Whitehead and neither he nor his partner brought up Dana Karachner again, it was rather Mr. Rott who said, you're telling me I killed my friend in regards to Dana. That's the initiation. And first of all, Special Agent Whitehead said, no, we're not saying that. We're saying that you had a role, but we're not saying that you killed him. It was then Mr. Rott who goes into further discussion and talks about, well, you know, I don't understand how we shot up together that night and he drove home and he dies and I'm still here. You know, he's already established that he's familiar with his Miranda rights. He's already established that he can assert them with regards to that subject matter if he wants to, because he's already done it. He's had reaffirmed to him by Special Agent Whitehead that it was perfectly acceptable to assert that right and stick to that right with regards to Dana Karachner. But he chose not to. That's knowing. And when we get to the voluntariness, you can watch the videotape. I'm sorry. Would you say the district court was finding facts or was it applying law to facts when it determined that he made that limited invocation? In other words, should we be reviewing this de novo or for clear air? Well, if the question is whether there can be a limited invocation whatsoever, that would be a question of law. Sure. So this court would be able to review that de novo. However, if there can be a limited invocation, then the question of whether the invocation was limited, whether it was ambiguous, those are all findings of fact that would be subject to clear air review. Okay. And you can give us no case upholding a limited invocation. That's correct. As I stand here, I cannot provide you with a case that explicitly says limited to subject matter. However, again, in both Barrett and Roberson, there is discussion about how you go with what the defendant says. And you can limit it in scope in Barrett, at least as far as to the act. The rationale would be the same here. And in Roberson, a key fact. The big fact that they said was a difference in that case was that the defendant had said he did not want to answer any questions. Why would they point out that this was an important fact in their consideration in finding against the state there that there were that the defendant did not did not want to answer any questions if that was always going to be read into the invocation law? So, you know, it may very well be. And if you want further briefing or I can look at it and see if I can dig something up. But, you know, that's like something the Supreme Court might be interested in looking at. Perhaps I wouldn't be arguing it. So whoever would do perhaps maybe a better job of research than I did, apparently. But again, you know, I, I do believe that the defendant here effectively waived that argument by saying that they agreed that Barrett allows for limitations in scope. But in any event, I believe that the cases of the Supreme Court has said that touch at least tangentially on this issue. The rationale supports the position of the United States here. Let me ask you a question. So your theory is, and maybe the district courts as well, he mentions his friend. But then Whitehead follows up with, well, basically we think you had a role in the death and began interrogation again. Maybe is it all right, I suppose, under the law for them to take that opportunity to start to reinterrogate? Should, should we be requiring additional Miranda warnings at that point? That, you know, you just brought this up. We, you know, remember, you know, and all the Miranda warnings. I don't think so, particularly when you know you have a defendant here who is familiar with his Miranda rights, who has had them verbally explained to them and to him twice actually by that point at the outset. And, of course, right after he invoked those rights, he had reaffirmed by Special Agent Whitehead that that was his right. Those were the ground rules. He didn't have to talk about anything that he didn't want to. And certainly not in a situation where there is really no coercion whatsoever. I mean, all all Special Agent Whitehead is doing at that point is clarifying why they're there. It's not we're not saying. I mean, someone else might look at that as sort of a subtle baiting. You know, well, we you know, you had a role in the death of your friend to get him talking about it. Even even if you look at it that way, I don't think that would be improper. I mean, if you look at this court's decision in Miller v. Felton to determine, OK, what is what is coercive? What is what is designed to get someone to talk about something that they may have reinitiated something and get them to wait? And there, you know, you've you've got a police officer. I believe it was a police officer who just outright lies and gives false information in an attempt to get the defendant to talk. And this court said, well, you know, that's not great, but it's not sufficiently coercive to render this nonvoluntary. And I mean, I think this court described some of the other things that were done by law enforcement there as maudlin, you know, talking about you're my brother. I want to help my brother. You may have mental illness. We need to we need to get you mental health. Nothing like that happened here. Special Agent Whitehead sat there and was as professional as I think any of us would want an FBI agent to be in that situation. He steered clear of the of the subject matter that Mr. Wright invoked his right to. I mean, that's arguable, isn't it? He got back on friends who overdose. It is a friend or acquaintance who overdosed. Yes. However, that is different from the situation with Dana Carrickner, because there was absolutely no accusation that Mr. Wright had any role in Stan Derby's death. And it was done in the context of describing why they wanted to get the suppliers, the people like L.B., so that they could go up the chain and get the poison out of the community. It was in a completely different context than any discussion about Dana Carrickner and James Roth's potential role in James Carrickner's death or in Dana Carrickner's death. With that, I see my time is almost up. Unless there are any further questions.  Thank you. Your Honor, first, I'd like to concede that the government's attorney, Mr. Strudy, was absolutely right. I did say a suspect's indication of right can be limited in scope. I disavow that statement. And I have to say, almost any time I've prepared for an oral argument, I've looked back at my briefs and at least at one point thought, what was I thinking at that time? So I will just reiterate. Are you precluded from considering that situation then about whether there can be a limitation in scope? I see no basis for it. And I think there's a very good reason why, which is it's hard to imagine how that's going to be enforced. If a suspect, I suppose, theoretically could say, I'm not going to talk about Joe Smith, maybe that would stand. But if it's anything other than that, and here this was very ambiguous, that aspect, talking about how he's in serious trouble and about what kind of sentence he's going to get, there is really no way that an FBI agent sitting there is going to be able to specifically determine what exactly the suspect has carved out in terms of what's on limits and off limits. The very simple remedy for that is the officer can cease interrogation. He could ask questions to clarify the scope to see if there's some way that it could be more explicit. And if he does that, the agent really hasn't lost anything. They can, if the scope is not limited, they can come back with the attorney and with counsel present, they can go into whatever topics they want to. So the agent is only losing the opportunity to talk to a suspect without counsel and all of the issues that that raises. Any further questions? I just ask the court to reverse the district court and remand for a new trial. Thank you. Thank you, counsel. We thank both counsel for their excellent arguments today and their excellent briefing in this interesting case. We will take the case under advisement.